**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| S.V. and D.V., as parents and next friends of K.V., a minor | : |
| | : |
| | :   C.A. No. |
| **Plaintiff** | : |
| | : |
| v. | :   **JURY TRIAL CLAIMED** |
| | : |
| CHARIHO REGIONAL SCHOOL DISTRICT; | : |
| JENNIFER POORE, individually and in her | : |
| capacity as Principal of the Charlestown | : |
| Elementary School; and | : |
| CASSANDRA CHARETTE, individually and | : |
| in her capacity as teacher in the Chariho | : |
| Regional School District | : |

**COMPLAINT**

**JURISDICTION**

1.  This is a Complaint seeking vindication of minor child K.V.'s right to a school environment free of harassment based upon disability pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the First Amendment of the United States Constitution; the Equal Amendment Clause of the Fourteenth Amendment of the United States Constitution; and the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1.  This is also a Complaint for negligence under Rhode Island law.  This Court has subject matter jurisdiction pursuant to 28 U.S.C.A. § § 1331 (federal question jurisdiction) and 1367 (supplemental jurisdiction).

**PARTIES**

2.  Plaintiffs S.V. and D.V. are the parents and next friends of K.V., now ten years old.

1

3.   The Defendant Chariho Regional School District is a regional school district duly organized under the provisions of R.I. General Laws § 16-3-1 *et seq.* and the P.L. 1958 ch. 55, as amended, and is sued in its own capacity pursuant to R.I. Gen. Laws § 16-3-11(a)(2).

4.   At all times relevant hereto, Jennifer Poore was the Principal of the Charlestown Elementary School, and is sued individually and in her capacity as Principal of the Charlestown Elementary School.

5.   Cassandra Charrette was K.V.'s fourth grade teacher at the Charlestown Elementary School in academic year 2022-2023, and is sued individually and in her capacity as a teacher in the Chariho Regional School District.

## FACTS

6.   Throughout her school career, which began at the age of three, K.V. has attended the schools operated and controlled by the Chariho Regional School District.

7.   Since birth, K.V. has suffered from Ehlers Danlos Syndrome.

8.   Ehlers Danlos Syndrome is a hereditary disease affecting the connective tissues of the body that, among other things, causes joint instability and joint hypermobility, joint pain, and fatigue.

9.   As a result of her suffering from Ehlers Danlos Syndrome, K.V. is substantially limited in number of daily life activities, including but not limited to performing manual tasks, walking, standing, bending, stretching, lifting, pushing, pulling, learning, concentrating, thinking, and working.

10.  Because of her medical condition, K.V. can suffer joint dislocations and sprains from normal, day-to-day encounters such as an aggressive handshake or opening a heavy fire door.

11.  K.V.'s joint dislocations also render her susceptible to falls and further injury.

12. K.V.'s medical condition also comes with a weakened immune system and susceptibility to illness.

13. As a result of K.V.'s medical condition, K.V. suffers substantial amounts of pain and reduced stamina, resulting in an inability to tolerate a regular school schedule.

14. At all times during her school career, K.V. was a "qualified person with a disability" due to her medical condition. as defined by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.

15. Throughout K.V.'s school career, Defendant has K.V. has been identified as a student with a disability for the purposes of Section 504 of the Rehabilitation Act, 29 U.S.C. § § 794, and has provided a Section 504 Plan.

16. At all times relevant to this Complaint, K.V. attended the Charlestown Elementary School, which was operated by the Defendant Chariho Regional School District.

17. Because of her medical condition and resultant inability to tolerate a regular school day, K.V. needed shortened school days, late arrivals, early dismissals, and other scheduling modifications as a reasonable accommodation for her disability.

18. When K.V. began kindergarten at the Charlestown Elementary School in school year 2018-2019, Defendant Poore expressed unwillingness to provide reasonable accommodations to K.V.s school schedule.

19. Despite K.V.'s medically documented needs for scheduling accommodations, Defendant Poore continued to insist that K.V. attend a full school day.

20. As a result of Defendant Poore's insistence that K.V. attend a full school day, K.V. did not start kindergarten until late October, 2018, and her parents were forced to homeschool her.

21.  In October, 2018, K.V.'s parents were forced to go to the Director of Pupil Personnel Services, Dr. Jennifer Durkin, to intercede on their behalf, before K.V. was granted a modified schedule.

22.  Despite a shortened school schedule being agreed upon at an October 23, 2018 504 Meeting, Defendant Poore and other school staff continued to press for a longer schedule, despite knowledge that a longer school day was not within K.V.'s capabilities.

23.  In November, 2018, D.V. informed Defendant Poore that K.V. was suffering from extreme fatigue and pain even on the shortened schedule, and as a result was increasingly susceptible to falls and further injury.

24.  Defendant Poore began pressuring D.V. to require K.V. to participate in tutoring in the afternoons.

25.  K.V. has challenges in self-regulating her physical activities, wants to participate in the same activities as her peers, and does not want to "look different" from her peers.

26.  Without adult intervention, K.V.'s desires to engage in the same activities as her peers can result in her "overdoing" or engaging in activities which are dangerous for her.

27.  For one example, K.V. needed to be kept from trying to climb the monkey bars in the playground.

28.  For another example, during her kindergarten years, K.V. would be reluctant to leave at early dismissal time.

29.  When D.V. would arrive at school for K.V.'s agreed-upon early dismissal, staff would chide D.V., saying: "She wants to stay, Mom," in K.V.'s presence.

30. Staff persisted in this behavior despite knowledge that K.V. could not self-regulate her activities and could not recognize that she needed to adhere to an early dismissal schedule in order to avoid debilitating fatigue.

31. Staff persisted in this behavior in K.V.'s presence, knowing that they were undermining D.V.'s efforts to maintain her daughter's early dismissal schedule, which was designed to protect K.V.'s health.  This in turn caused K.V. to fear that school staff was getting angry and feel that she needed to push herself.

32. Staff members also made negative comments and faces, again in front of K.V., regarding K.V.'s reduced schedule.

33. In roughly December, 2018, D.V. complained about the staff's behavior to Defendant Poore in writing, with a request that Defendant Poore instruct her staff to stop.

34. Defendant Poore knew or should have known that D.V. was complaining of disability-based harassment, but failed to initiate an investigation.

35. Thereafter, D.V. was prevented from entering the school building to collect K.V. at early dismissal times, but was required to stand in the foyer for K.V. to be brought to her.

36. Standing and waiting in the foyer was a hardship to D.V., because D.V. suffers from the same condition as K.V., had a newborn baby, and was offered no seating.

37. On information and belief, Defendant Poore instructed staff to force D.V. to stand in the foyer in retaliation for having complained of the need for early dismissals and for staff behavior at early dismissals.

38. K.V.'s primary doctor came to a school meeting to discuss accommodations regarding attendance.

39. The primary doctor happened to be Principal Poore's neighbor.

5

40. The primary care doctor explained that K.V.'s stamina and ability to tolerate a full school day was limited, and that K.V.'s abilities could vary from day to day.

41. Nevertheless, throughout K.V.'s K-4 years, Defendant Poore would continue to challenge K.V.'s need for absences and early dismissals, as well as the parental decisions of S.V. and D.V., stating: "I'm not seeing the symptoms."

42. For example, on a number of occasions, Defendant Poore pressed for authorization to speak to K.V.'s medical providers outside of the presence of S.V. and D.V.

43. School staff refused to provide K.V. with assistance with remedying the joint dislocations that accompany her medical conditions, citing "liability."

44. As a result, D.V. was forced to come to the school, in order to assist K.V. with the dislocations, sometimes 2-3 times a day, with her new baby who itself had health problems.

45. Initially, D.V. was allowed to go to the clinic to assist K.V. with the dislocations.

46. However, beginning in roughly October, 2020, D.V. was no longer allowed to go to the clinic to assist K.V., but was forced to assist D.V. in the office, in the presence of others.

47. D.V. was also required to wait for supervision from staff before assisting K.V. with the dislocation, with K.V. in significant pain and discomfort during the wait.

48. In November, 2020, when D.V. was attempting to explain K.V.'s medical needs to the school nurse, the school nurse suggested that K.V. visit the school psychologist.

49. The school nurse knew or should have known that K.V.'s problems were physical, not mental.

50. Because of K.V.'s medical condition, she continued to require more time out of school over the next two school years due to fatigue and injuries related to her medical condition.

51. Despite knowing of K.V.'s medical condition, and the accommodations in the 504 Plan for scheduling accommodations, Defendant Poore continued to pressure for K.V. to physically attend school more often in 2021-2022 and 2022-2023, despite knowledge of her medical condition.

52. Defendant Poore cited concerns with K.V.'s academic performance as the reason for continuing to pressure for increased attendance, rather than providing her with other accommodations that would allow her access to her education, such as home or remote tutoring, or assistance with writing.

53. As a result, K.V. was denied access to instruction.

54. By the beginning of her fourth grade year, 2022-2023, K.V. was exhibiting increased struggles with balancing her health and accommodation needs with her desires to "fit in" with her peers.

55. D.V. communicated with Chariho staff regarding K.V.'s increased struggles with balancing her health and accommodation needs with her desires to "fit in" with her peers, and the resultant need for increased monitoring and supervision of K.V. during the school day.

56. During the fall of 2022, K.V. experienced a number of illnesses that required her absences from school.

57. K.V.'s illnesses were tied to her medical condition, which causes lowered immunity.

58. Defendant Poore continued to pressure about attendance.

59. At one point, when K.V. was particularly ill, Defendant Poore called K.V. and said, "We talked about attendance" in a scolding and condescending tone.

60. K.V. was punished for those absences by not being given a role in the class play scheduled for the week of November 5, 2022.

7

61. When asked why K.V. was not being permitted to have a role in the class play, the classroom teacher, Cassandra Charette, stated that that was because K.V. had been absent on the day when roles were assigned.

62. Charette persisted in that position despite the fact that K.V. could have filled in for a student who was absent the day of the play, and K.V. knew that student's lines.

63. Charette continued to deny K.V. the ability to participate in classroom activities, such as serving as door holder, or recycling, on the basis of K.V.'s medical condition, despite being made aware that these activities were within K.V.'s capabilities.

64. In January, 2023, K.V. was also denied the ability to participate in classroom activities, i.e, "Friday Fun," because she had missed work due to her absences.

65. Throughout 2022-2023 school year, Charette repeatedly subjected K.V.to questioning about her late arrivals and absences, despite being aware of K.V.'s need for accommodations.

66. Charette's challenging of K.V.'s late arrivals and absences caused K.V. to feel self-conscious and fearful of getting into trouble.

67. D.V. made a written complaint regarding Charrette's challenging of K.V.'s late arrivals and absences, and copied it to Defendant Poore.

68. In or about February, 2023, Charette convened a meeting with D.V. and the principal about K.V.'s attendance.

69. On or about March 10, 2023, K.V. was participating in recess on the school playground.

70. During that recess, a group of K.V.'s friends began pressuring her to do physical activities that were beyond her capabilities due to her disability, including but not limited to climbing up a slide without shoes on.

71. K.V. attempted the activity of climbing up the slide more than once.

72. On at least one attempt, K.V. was knocked off of the slide.

73. During that recess, the same group of friends physically assaulted K.V., including but not limited to deliberately bumping into her and shoving her to the ground.

74. The activities on the playground continued for about 20-25 minutes without any adult intervention or supervision.

75. The bullying continued into lunch, where K.V. was excluded and pressured to eat strange combinations of food.

76. After the recess, K.V. reported the incidents on the playground to Charette and at lunch to Charrette, including being shoved to the ground.

77. Instead of investigating the matter as a bullying complaint, Defendant Poore called K.V. into a meeting with her other tormentors.

78. At no time during the remainder of the school day was K.V. provided any medical attention, despite school official's knowledge of the assault and despite school officials' knowledge of K.V.'s susceptibility to injury due to her medical condition.

79. By the afternoon of March 10, 2023, K.V. had a headache and neck pain. This would escalate over the next several days to blurry vision, ringing in her ears, severe fatigue, lightheadedness, nausea and loss of appetite.

80. No later that Monday, March 13, 2023, D.V. notified Defendant Poore of the possibility that K.V. had suffered severe injury.

81. As a result of the incidents on the playground, K.V. was over the next week diagnosed with a concussion, and would ultimately be diagnosed with an aggravation of a pre-existing tethered spine condition.

82. As the result of her injury, K.V. missed school until May, 2023.

83. K.V.'s injuries required new and different accommodations.

84. Despite knowledge of K.V.'s condition, Chariho effectively failed to provide reasonable accommodations to allow her to access instruction, such as tutoring. Tutoring was offered, but the tutor provided was never available.

85. On or about April 28, 2023, K.V.'s parents attended a meeting to discuss K.V.'s return to school.

86. Said meeting included Charette.

87. When K.V. returned to school on May 1, 2023, Charrette failed to implement the new accommodations, including but not limited to the accommodation of check-ins for K.V.'s well being.

88. One of the other new accommodations for K.V.'s post-concussion return to school was provision of a beanbag chair in the classroom where K.V. could rest.

89. On the first day that K.V. returned to school, on May 1, 2023, the beanbag chair had not arrived.

90. When the beanbag chair finally arrived, Charette threw it in the corner and made an annoyed remark that nobody should touch the beanbag chair "until I can figure out what to do with it." This caused K.V. to be reluctant to use it, and then the beanbag chair was removed, and was not made available to K.V. for some time.

91. Charette further announced in writing that she did not want to permit K.V. to participate in an afterschool American Sign Language class, stating that she did not want K.V. to dislocate her fingers and that she had concerns about K.V.'s stamina.

92. Charrette further announced that the girls who had bullied K.V. on the playground had also signed up for the American Sign Language class, that that ". . . I can't constantly supervise every interaction and honestly feel a little anxious that I am going to miss a finger wagging or some sort of face being made."

93. Charrette then pressured K.V. to participate in a different activity, crocheting.

94. Charrette's alleged concerns about K.V.'s dislocating her fingers were thus pretextual.

95. One of K.V.'s post-concussion accommodation was use of a standing desk.

96. At one point, Charrette announced in front of the class that if K.V. did not stop talking, K.V. would have to go back to her "normal" desk.  This had the effect of announcing to the entire class that K.V. was using a disability accommodation.

97. When K.V. attempted to participate in a recess recycling activity or helping in the library, Charrette told her that she should be spending the time doing her make-up work, or cited the fact that K.V. had been absent because of pain.

98. When K.V. returned to school, Charrette repeatedly ignored K.V., refusing to call on her.

99. When K.V. returned to school, Charrette refused to allow K.V. sit with her friends during assembly, while other students were allowed to choose whom to sit with

100. Defendant Charrette's conduct was motivated by discriminatory animus towards K.V. based upon her disability, and also based upon retaliatory animus against D.V. for having advocated for her daughter's receiving reasonable accommodations.

101. D.V. reported Charrette's behaviors to Defendant Poore in writing.

102. Defendant Poore knew or should have known that D.V. was complaining of disability-based harassment and retaliation by Charrette, but failed to initiate an investigation or otherwise take effective action to stop the harassment.

103. Instead, Defendant Poore complained to D.V. about how staff and Charrette were upset about D.V.'s report.

104. Another 4th grade teacher also began to behave to K.V. in a hostile fashion.

105. K.V. was thus subjected to a hostile and retaliatory school environment, which persisted until she moved on to the Chariho Middle School at the end of the 2022-2023 school year.

106. Defendant Poore's course of conduct throughout K.V.'s career at Charlestown Elementary School, and inaction with respect to Defendant Charrette, was motivated by discriminatory animus towards K.V. based upon her disability, and also based upon retaliatory animus against D.V. for having advocated for her daughter's receiving reasonable accommodations.

107. Defendant Chariho Regional School District failed to adequately monitor and supervise K.V. on her post-concussion return to school, thus resulting in additional head blows and re-injury.

108. Subsequent to the playground incident, K.V. also began to exhibit signs of emotional distress when attending school and being around other students.

12

109. In school year 2023-2024, K.V. moved on to the Chariho Middle School.

110. Early in the school year 2023-2024, K.V. was called to the Dean in charge of discipline and aggressively questioned about her absences.

111. D.V. contacted the school nurse, then the Dean.

112. During her conversation with the Dean, the Dean admitted that K.V.'s 504 Plan appeared on her profile.

113. The principal of the school later apologized for the Dean's having called K.V. to the office regarding her attendance.

114. On or about May 14, 2024, K.V. attempted to use one of the school restrooms.

115. When K.V. exited the restroom stall, another student, Student A. began punching student on the top of her head repeatedly.

116. When the student stopped, K.V. asked Student A. why she had punched her.

117. Student A. responded by hugging K.V. as if to console her, then grabbed K.V.'s leg out from under her, causing K.V. to fall flat on her back and hit her head.

118. K.V. "blacked out," then finally got up and went back to class.

119. Because there was a substitute in that class, K.V. did not know what to do next.

120. K.V. went to her next class, and told that teacher what had happened, and then went to the nurse.

121. As the result of the assault, K.V. has suffered another concussion and has had worsening of her back, leg, and feet pain.

122. Chariho failed to provide reasonable supervision of Student A. under the circumstances.

123. Subsequent to May 14, 2024, the family was promised a safety plan, under which K.V. would have no further contact with Student A.

124. On the first day that K.V. attempted to return to school, Chariho allowed Student A. come in close contact with K.V.

125. Because of her injuries, K.V. was unable to tolerate the remainder of the school day, went home, and was unable to physically return to school for the remainder of the 2023-2024 school year.

126. Since the May 14, 2024 incident, Student A. has spearheaded a campaign of harassment directed at K.V., in retaliation for K.V.'s reporting the assault

127. The family has put Chariho on notice of the harassment by Student A., but has received no response.

<u>**COUNT I**</u>
<u>**SECTION 504 OF THE REHABILITATION ACT and**</u>
<u>**AMERICANS WITH DISABILITIES ACT**</u>
<u>**(Hostile Environment and Failure to Accommodate)**</u>

128. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

129. The Americans with Disabilities Act prohibits discrimination on the basis of disability, requires reasonable accommodation for disabilities, and further prohibits harassment and discrimination against qualified individuals with disabilities.

130. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability, requires reasonable accommodation for disabilities, and further prohibits and further prohibits harassment and discrimination against qualified individuals with disabilities.

131. The Defendant, Chariho Regional School District receives federal financial assistance, as defined by 29 U.S.C. § 794, and, as such, may not discriminate against a person

because of disability, nor may it retaliate against individuals who advocate for the rights of individuals with disabilities.

132. The Defendant, Chariho Regional School District, is a "public entity" as defined in 42 U.S.C. § 12131(1), and receives federal financial assistance so as to be covered by the mandates of the ADA.

133. K.V. was a qualified individual with a disability pursuant to both Section 504 and the ADA.

134. Pursuant to Section 504 and the ADA, K.V. was entitled to reasonable accommodations for her disability.

135. Defendant Chariho Regional School District failed to provide reasonable accommodations for K.V.'s disability, both before and after her March 10, 2023 injuries.

136. Pursuant to Section 504 and the ADA, K.V. had a right to be free of harassment based upon her disability.

137. Defendants Chariho Regional School District, Poore, and Charrette subjected K.V. to harassment and discrimination based upon her disability.

138. Said harassment and discriminatory treatment was so severe and pervasive, and objectively offensive that it denied K.V. equal access to her education.

139. Defendant Chariho Regional School District had actual knowledge of said harassment and discrimination, but were deliberately indifferent to the same in that it failed to take effective action to stop the harassment and discrimination.

140. As a direct and proximate result of the wrongful actions of Defendants, Plaintiffs S.V., D.V., and K.V. have suffered financial harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

141. Said actions of Defendant Chariho Regional School District were done with conscious disregard to Plaintiffs' legal rights.

142. Said actions of Defendant were wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiffs demand judgment against Defendant Chariho Regional School District, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

<u>**COUNT II**</u>
<u>**SECTION 504 OF THE REHABILITATION ACT and**</u>
<u>**AMERICANS WITH DISABILITIES ACT**</u>
<u>**(Retaliation)**</u>

143. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

144. Section 504 of the Rehabilitation Act and the Americans with Disabilities Act prohibit retaliation for the exercise of protected conduct, including advocacy for the rights of individuals with disabilities.

145. Plaintiff D.V. engaged in protected activity by advocating for the rights of her daughter, a student with a disability within the meaning of both Section 504 and the ADA, by advocating for reasonable accommodations for disability, and for cessation of disability-based harassment.

146. Plaintiff D.V.'s protected activity was a substantial or motivating cause of retaliatory action against her and K.V. by the Defendants.

147. This retaliation took the form of creating and tolerating a hostile educational environment for D.V.

148. As a direct and proximate result of the wrongful actions of Defendants, Plaintiffs have suffered financial harm, as well as emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

149. Said actions of Defendants were done with conscious disregard to Plaintiffs' legal rights.

150. Said actions of Defendants were wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiff demands judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT III
## 42 U.S.C. § 1983 (Fourteenth Amendment)

151. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

152. The Fourteenth Amendment of the United States Constitution guarantees the right to equal protection under the law.

153. Defendants, acting under the color of state law, unlawfully deprived K.V. of her right to equal protection under the law.

154. Defendant Chariho Regional School District, Defendant Poore, and Defendant Charrette deprived K.V. of her right to equal protection under the law by failing to take action to creating and/or failing to remediate a hostile educational environment for K.V.

155. The Defendant Chariho Regional School District failed to train, supervise, and discipline Defendants Poore and Charrette for their actions against K.V. and her family, and thus permitted Defendants Poore and Charrette to be in a position to violate K.V.'s right to equal

17

protection.

156. The Defendant Chariho Regional School District and Defendant Poore failed to train, supervise, and discipline Defendant Charrette for her actions against K.V. and her family, and thus permitted Defendant Charrette to be in a position to violate M.R.'s right to equal protection.

157. The Defendants, Chariho Regional School District, being aware that Defendants Poore and Charrette were engaged in a course of discriminatory conduct against Plaintiffs and failing to train, supervise, and discipline Defendants Poore and Charrette in response, acted with deliberate indifference towards the Plaintiffs' constitutional rights.

158. Defendants Poore, being aware that Defendant Charrette was engaged in a course of discriminatory conduct against Plaintiffs and failing to train, supervise, and discipline Defendants Charrette in response, acted with deliberate indifference towards the Plaintiffs' constitutional rights.

159. As a result of a conscious policy, practice, custom or usage, the Defendant Chariho Regional School District has permitted and allowed harassment based upon disability.

160. As a direct result of the actions of Defendants, Plaintiffs have suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

161. Said actions of Defendants were done with conscious regard for the legal rights of Plaintiff.

162. Said actions of Defendants were wicked, wanton, and for the good of society must be punished.

WHEREFORE, Plaintiffs demand judgment against Defendants, including but not

limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT IV – 42 U.S.C. § 1983 (First Amendment Retaliation)

163.  Plaintiffs re-allege those averments contained in the Paragraphs above as if fully restated herein.

164.  The First Amendment of the United States Constitution guarantees the right to petition for redress of grievances.

165.  Plaintiff D.V. attempted to exercise her right to petition for redress of her grievances and advocate for her daughter regarding reasonable disability accommodations and protection from disability-based harassment.

166.  Defendants, acting under the color of state law, unlawfully retaliated against Plaintiff D.V. for having exercising her right to petition for redress of grievances.

167.  Defendants' retaliation took the form of This retaliation took the form of creating and tolerating a hostile educational environment for D.V.

168.  The Defendant Chariho Regional School District failed to train, supervise, and discipline Defendants Poore and Charrette for their actions against K.V. and her family, and thus permitted Defendants Poore and Charrette to be in a position to violate K.V.'s right to equal protection.

169.  The Defendant Chariho Regional School District and Defendant Poore failed to train, supervise, and discipline Defendant Charrette for her actions against K.V. and her family, and thus permitted Defendant Charrette to be in a position to violate M.R.'s right to equal protection.

170.  The Defendants, Chariho Regional School District, being aware that Defendants

Poore and Charrette were engaged in a course of discriminatory conduct against Plaintiffs and failing to train, supervise, and discipline Defendants Poore and Charrette in response, acted with deliberate indifference towards the Plaintiffs' constitutional rights.

171. Defendants Poore, being aware that Defendant Charrette was engaged in a course of discriminatory conduct against Plaintiffs and failing to train, supervise, and discipline Defendants Charrette in response, acted with deliberate indifference towards the Plaintiffs' constitutional rights.

172. As a result of a conscious policy, practice, custom or usage, the Defendant Chariho Regional School District has permitted and allowed for harassment based upon disability.

173. As a direct result of the actions of Defendants, Plaintiff has suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

174. Said actions of Defendants were done with conscious regard for the legal rights of Plaintiff.

175. Said actions of Defendants were wicked, wanton, and for the good of society must be punished.

WHEREFORE, Plaintiffs demand judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT V
## Negligence

176. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

177. Defendant Chariho Regional School District had a duty to exercise reasonable care in the supervision, custody, care, and education of K.V..

178. Defendant Chariho Regional School District breached that duty by failing to take reasonable actions to supervise K.V. and other students on the playground on March 10, 2023, and also subsequent to K.V.'s return to school from that incident, and also with respect to the May 14, 2024 assault.

179. Defendant Chariho Regional School District also breached that duty by failing to take reasonable actions to prevent K.V. from suffering discrimination and harassment based upon her disability.

180. Defendant Chariho Regional School District breached that duty when it failed to train, supervise, or discipline Defendants Poore and Charrette, and otherwise prevent them from subjecting M.R. to discrimination, harassment, and retaliation.

181. As a direct result of the actions of Defendant Chariho Regional School District, Plaintiffs have suffered and will continue to suffer financial harm, emotional distress, personal inconvenience, worry, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiffs demand judgment against Defendant Chariho Regional School District, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

## COUNT VI
### (Rhode Island Civil Rights Act)

182. Plaintiffs re-allege those averments contained in the Paragraphs above as if fully re-stated herein.

183. Rhode Island Gen. Laws § 42-112-1 *et seq*. provides, in pertinent part:

All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

184. K.V.. is a disabled person and has a disability covered by R.I.G.L. § 42-112-1 *et seq*.

185. Defendants, by their acts and omissions, including, but not limited to, those described herein, discriminated against K.V.. based upon her disability by subjecting her to a hostile educational environment.

186. Defendants' actions were outrageous, wicked and wanton, and for the good of society must be punished.

WHEREFORE, Plaintiffs demand judgment against Defendants, including but not limited to injunctive relief, compensatory and punitive damages, attorneys' fees and costs in an amount sufficient to confer jurisdiction upon this Court.

Plaintiffs,
By their attorney,

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
Robinson & Clapham
123 Dyer Street, Suite 135
Providence, RI  02903
(401) 331-6565
(fax) 331-7888
vbejma@smrobinsonlaw.com

22